IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| Ellen Matheny, et al.<br>Plaintiffs | * | |
| | * | |
| vs. | | Civil No. L-04-2566 |
| | * | |
| Lowe's Home Centers, Inc.<br>Defendant | * | |

\*\*\*\*\*\*

**MEMORANDUM**

This is a premises liability case. Ellen Matheny was injured at the Hagerstown, Maryland, Lowe's Home Centers, Inc. ("Lowe's") when a vertically-rolled 9x12 foot carpet toppled from its display stand and struck her on the head. On August 5, 2004, she filed the instant suit against Lowe's for negligence.[1] Now pending is Lowe's Motion for Summary Judgment. (Docket No. 28). For the reasons stated herein, the Court will, by separate order, DENY the motion without prejudice to refiling after the parties have supplied additional briefing necessary to flesh out the record.

**I.      Introduction**

Under Maryland law, Lowe's owes a duty to Matheny to "exercise ordinary care to keep the premises in a reasonably safe condition."[2] Matheny alleges that, as she was standing in the

---

[1]    Matheny's Complaint contains two counts: (1) negligence and (2) loss of consortium.

[2]    Rawls v. Hochschild, Kohn & Co., 207 Md. 113, 117, 113 A.2d 405, 407 (1955).

       The parties agree that Matheny was an invitee when she was injured at Lowe's. The Maryland courts have "long recognized that a possessor of property owes a certain duty to a person who comes in contact with the property. The extent of this duty depends upon the person's status while on the property." BG & E v. Lane, 338 Md. 34, 44, 656 A.2d 307, 311

carpet aisle speaking with a sales clerk, a vertically-rolled, 9x12 foot carpet fell from a stand that stood three feet above the floor and hit her from behind.  On review of the parties' briefs, the Court finds that there are questions that must be answered before the motion can be decided.  Accordingly, the Court will deny Lowe's Motion for Summary Judgment without prejudice and ask the parties to file supplemental briefs.

**II.     Facts**

On Saturday, August 11, 2001, Matheny drove to the Lowe's store in Hagerstown, Maryland, to complain about Lowe's defective installation of a back-splash in her kitchen.  (Pls. Opp'n, 4).  On the date of the accident, the Hagerstown Lowe's opened at 7:00 a.m.  (Def. Reply, 3).  Matheny arrived around 9:00 a.m., shopped for a few small items, then went to the kitchen department to make her complaint.  (Pls. Opp'n, 4).  Not finding anyone in the kitchen department, Matheny found a clerk, Scott Ballard, in the carpet aisle.  (Id.)

The Hagerstown Lowe's rolls its large carpets and displays them vertically.  (Def. Mot. Summ. J., 3).  The butt end of each roll rests on a shelf that is approximately three feet off the floor.  (Id.)  The roll inclines away from the aisle at a slight angle.  (Id.)  The top portion of the roll leans against the back of the stand, and it is wedged between metal brackets or arms.  (Id.)  A two-inch, horizontal "kick beam" keeps the bottom of the carpet roll from sliding into the aisle.  (Id.)  When properly stored, the heavy carpet rolls are held in place by gravity.

---

(1995).   Maryland recognizes four classifications: invitee, licensee by invitation, bare licensee, and trespasser.  An invitee is a person "on the property for a purpose related to the possessor's business."  Baltimore Gas and Elec. Co. v. Flippo**,** 348 Md. 680, 688, 705 A.2d 1144, 1148 (1998).

According to Matheny, she was standing with her back towards a display rack talking to Ballard when, without warning, one of the heavy rolls toppled towards her like a felled tree, striking her in the head. (Pls. Opp'n, 4). Because Matheny's back was to the carpet, she did not see it fall. For the same reason, she cannot say whether it had been improperly perched at a precarious, vertical angle. All she knows is that the carpet fell and hit her.

Ballard disputes Matheny's story. On deposition, he testified that he was assisting another customer when he saw Matheny pulling the plastic wrapper off of a vertically stored carpet. (Def. Mot. Summ. J., 4). According to Ballard, Matheny had one hand on her shopping cart, and she tugged at the wrapper with the other hand. (Id.) When he noticed the carpet move, Ballard yelled, "Look out!" (Id.) The carpet fell quickly, and Matheny was struck despite Ballard's warning. Matheny denies that she was tugging at the carpet or that Ballard warned her.

## III.   Summary Judgment Standard

The Court may grant summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[3] Nevertheless, in determining whether there is a genuine issue of material fact, the Court views the facts, and all reasonable inferences to be drawn from them, in the light most favorable to the non-moving party.[4]

---

[3]   Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); see also Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987) (recognizing that trial judges have "an affirmative obligation" to prevent factually unsupported claims and defenses from proceeding to trial).

[4]   Pulliam Inv. Co. v. Cameo Properties, 810 F.2d 1282, 1286 (4th Cir. 1987).

**IV.     Analysis**

Because the accident occurred in Maryland, Maryland law applies.[5]  Under Maryland law, a store owner owes a duty to an invitee to "exercise ordinary care to keep the premises in a reasonably safe condition."[6]  A store owner is liable for an injury caused by a condition in the store if: (1) the store owner had actual or constructive notice of the condition, (2) the store owner had no reason to believe the invitee would discover the condition herself, and (3) the store owner invited the invitee into the store without making the condition reasonably safe, or giving adequate notice of the condition.[7]  Matheny has the burden of proving Lowe's negligence.[8]

On review of the parties' briefs, the Court finds that there are questions that must be answered before the motion can be decided.  Answering these questions may require additional discovery.  Accordingly, the Court will DENY Lowe's motion without prejudice to refilling after the parties have supplied additional briefing.

The briefs shall address the following questions:

(1)     Matheny is not apparently contending that Lowe's display racks are negligently designed.  Matheny has not produced any expert testimony to this effect.  Is this correct?

---

[5]     Konka v. Wal-Mart Stores, Inc., No. 97-1013, 1998 WL 24378 (4th Cir. Jan. 26, 1998).

[6]     Rawls, 207 Md. at 117.  The parties agree that Matheny was an invitee when she was injured at Lowe's because she was "on the property for a purpose related to the possessor's business." Baltimore Gas and Elec. Co. v. Flippo, 348 Md. 680, 688, 705 A.2d 1144, 1148 (1998).

[7]     Rawls, 207 Md. at 117; Mondawmin Corp. v. Kres, 258 Md. 307, 316, 266 A.2d 8, 12 (1970).

[8]     Konka v. Wal-Mart Stores, Inc., No. 97-1013, 1998 WL 24378, \*\*3 (4th Cir. Jan. 26, 1998); Wells v. Hyatt Hotels Corp., No. 94-1181, 1994 WL 750556, \*2 (D. Md. Nov. 17, 1994).

(2) Is this a correct statement of Matheny's theory: When properly seated in the rack, a carpet roll poses no danger. Lowe's was negligent because it placed the roll vertically on its end without leaning it backward onto the secure rest. Thus precariously positioned, the roll fell by itself. Alternatively, another customer pulled the roll out of alignment, creating a hazard that Lowe's negligently failed to spot.

(3) It might be argued that a roll should not fall over when a customer is merely tugging at the plastic cover with one hand to get a better look at the carpet. The Court need not concern itself with this issue because Ms. Matheny states that she was not tugging on the roll when it fell. Is this correct?

(4) The carpet rolls are heavy. Do customers ever help themselves by taking them down from the rack, or do they always wait to be helped?

(5) When someone takes a 9x12 foot carpet off the rack, how hard is it to dislodge the roll from its resting place?

(6) Have Lowe's personnel ever seen a roll fall by itself?

(7) Did Lowe's take any steps to alert its stores (including Hagerstown) to the risk of falling carpets?

(8) Did Lowe's have any policies or procedures for storing carpets or checking periodically to make sure that carpets are secure?

(9) Were the carpet racks inspected either that morning or the night before? Who was responsible for the inspections?

(10) What is the evidence concerning whether there had been any other customers in the carpet section the morning of the accident?

(11) Do the parties agree that "exclusive control" is the only open issue in applying the *res ipsa loquitur* test. In other words, the other parts of the test favor the plaintiff?

(12) A heavy carpet roll, properly seated in its rack, will not fall. There appear to be four possible explanations for the accident.

- **First**, Matheny pulled the carpet roll onto herself.

- **Second**, while inspecting the carpet, another customer left it perched in a precarious position. Because this happened shortly before the accident, store

5

      employees did not have a reasonable time within which to notice the dangerous condition and correct it.

- **Third,** a customer left the roll in a precarious position well before the accident, and Lowe's employees negligently failed to notice the danger.

- **Fourth**, store employees improperly stored the carpet.

How does the doctrine of res ipsa loquitur apply in each of these situations?

On or before March 24, 2006, the parties shall state whether additional discovery is necessary to answer these questions.  If so, how long do counsel need?  In the same letter, counsel shall suggest a briefing schedule leading to an in-court hearing on April 25, 2006 at 11:00 a.m.

Dated this 14th day of March, 2006.

                                                                _____/s/_____
                                                               Benson Everett Legg
                                                                Chief Judge